IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YONGSHENG CHEN, | : | Case No. 4:15-CV-1136 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| THE PENNSYLVANIA STATE | : | |
| UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM</u>**
October 5, 2016

Before the Court for disposition is Defendant The Pennsylvania State University's ("Defendant") Motion for a Protective Order.  For the reasons that follow, this Court will deny Defendant's Motion, but impose certain discovery limitations.

## I.    BACKGROUND

On December 21, 2015, Yongsheng Chen filed a Second Amended Complaint with the Court alleging (1) discrimination based on race and national origin in violation of Title VII, (2) discrimination based on race and national origin in violation of the Pennsylvania Human Relations Act, and (3) breach of contract.[1] These claims stem from Plaintiff's allegation that Defendant denied him tenure and

---

[1] Complaint (ECF No. 24).

1

promotion because of his race and national origin.  On January 18, 2016,

Defendant filed an Answer to Plaintiff's Amended Complaint.[2]

The parties have since engaged in discovery.  According to Defendant's

brief in support of the Motion for a Protective Order, discovery requests by

Plaintiff have included (1) 3,800 pages of documents, (2) two sets of

interrogatories, and (3) the depositions of the College of Earth and Sciences Dean

William Easterling and three of the five College Promotion and Tenure Committee

members who recommended against his promotion and tenure.[3]  Plaintiff has

served a Notice for the deposition of a fifth College Committee member.[4]

On August 31, 2016, Plaintiff also served a Notice of Deposition of Bruce

Miller, Associate Director of the Earth and Mineral Sciences Energy Institute.[5]

Plaintiff seeks to depose Mr. Miller concerning (1) Plaintiff's good performance

relative to an externally-funded research project with the Volvo Corporation, and

(2) Defendant's decision to relocate Plaintiff's laboratory, following the filing of

an Administrative Charge of Discrimination, in favor of a Caucasian professor.[6]

Defendant, in turn, seeks to prevent the deposition of Mr. Miller on the grounds

---

[2] Answer (ECF No. 27).
[3] Def.'s Br. In Supp. Of Mot. For Prot. Order Regarding Dep. of Bruce Miller ("Def.'s Br.") (ECF No. 44), at 2.
[4] *Id.*
[5] *Id.*
[6] Pl.'s Resp. in Opp'n to Def.'s Mot. for a Prot. Order Regarding Dep. of Bruce Miller ("Pl.'s Br.") (ECF No. 46), at 2.

that it is outside the scope of allowable discovery.[7]  This matter has since been

fully briefed[8] and is ripe for disposition.

## II.   DISCUSSION
### A. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim

or defense and proportional to the needs of the case."[9]  Although all relevant

material is discoverable unless an applicable evidentiary privilege is asserted,

Federal Rule of Civil Procedure 26(c) establishes that a "court may, for good

cause, issue an order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense . . . "[10]  The burden of showing "good

cause" rests with the party seeking the protective order.[11]  The moving party must

show with specificity that "disclosure will work a clearly defined and serious

injury to the party."[12]  "Good cause" cannot simply rest on "[b]road allegations of

harm, unsubstantiated by specific examples or articulated reasoning."[13]

Furthermore, even when the moving party has met its burden for a protective order,

---

[7] Def.'s Br., at 3.
[8] ECF Nos. 44, 46, & 47.
[9] Fed.R.Civ.P. 26(b)(1).
[10] Fed.R.Civ.P. 26(c).
[11] *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986).
[12] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) (*citing Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).
[13] *Cipollone*, 785 F.2d at 1121.

3

such an order "must be narrowly drawn as to not constitute an abuse of discretion."[14]

Within the United States Court of Appeals for the Third Circuit, seven factors have been recognized in evaluating where "good cause" exists:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.[15]

The District Court is best situated to decide which factors are relevant to the dispute at issue, and thus to "prevent both the overly broad use of [confidentiality] orders and the unnecessary denial of confidentiality for information that deserves it."[16]

## B. Analysis

In the matter at hand, the Court finds that Defendant has not shown good cause justifying the imposition of a protective order barring Plaintiff from deposing Bruce Miller.[17]  In his Response Brief in Opposition to Defendant's Motion for a

---

[14] *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F.Supp. 866, 892 (E.D.Pa. 1981).
[15] *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787–91).
[16] *Pansy*, 23 F.3d at 789.
[17] A party seeking the total prohibition of a deposition bears a "heavy burden" in showing good cause. *U.S. v. Mariani*, 178 F.R.D. 447, 448 (M.D.Pa. 1998)(Vanaskie, J.).

Protective Order, Plaintiff details the information he hopes to ascertain from Mr. Miller's deposition.  Specifically, Plaintiff states that Mr. Miller has knowledge of both (1) Plaintiff's good work on the Volvo project, and (2) Defendant's decisions to disassemble his reactor and relocate his lab to accommodate a retired Caucasian professor after Plaintiff had engaged in a protected activity.[18]  In its Reply Brief, Defendant concedes the relevance of Bruce Miller's deposition concerning Plaintiff's work on the Volvo project and any connection between Plaintiff's tenure denial and his 2014 compensation.[19]  The Court similarly finds that this evidence is within the scope of discovery and relevant to the issue of pretext within the *McDonnell-Douglas*[20] burden-shifting framework.[21]  In light of the fact that Defendant claims that Plaintiff was denied tenure due to his poor performance and the lack of an adequate grant program, the deposition of Mr. Miller concerning Plaintiff's good performance on the Volvo project together with the existence of a possible grant program is proper evidence of pretext.[22]

---

[18] Pl.'s Br. at 5.
[19] Def.'s Reply Br. in Supp. of Mot. for a Prot. Order Regarding Dep. of Bruce Miller ("Reply Brief") (ECF No. 47), at 3.
[20] 411 U.S. 792, 802–804 (1973).
[21] *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) ("[T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.").
[22] *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330–32 (3d Cir. 1995) (finding evidence of pretext where the employer terminated an employee who received good performance evaluations, was the only salesperson to exceed his sales quota for the two years prior to his

Defendant, however, also objects to Plaintiff's intended questioning of Mr. Miller concerning the lab relocation decision.  In support of its objection, Defendant argues that this line of questioning would allow Plaintiff to "effectively interject into the case a new claim and theory of liability."[23]  Plaintiff, in response, argues that evidence of the lab relocation is relevant to (1) establish whether the adverse employment action was motivated by invidious discrimination, and (2) as evidence of retaliation for filing a PHRC complaint.[24]  After careful consideration of the respective arguments and the relevance of such testimony, the Court will not permit Plaintiff to question Mr. Miller concerning the reactor disassembly and lab relocation.[25]

In *Fuentes v. Perskie*, the Third Circuit held that a plaintiff may show pretext under the *McDonnell-Douglas* framework by pointing to some direct or circumstantial evidence from which a reasonable factfinder can either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or

---

termination, and had received a bonus for surpassing his sales quota for those two years prior to his termination).

[23] Reply Brief, at 3.

[24] Pl.'s Br., at 9–10.

[25] Concerning Plaintiff's second justification for allowing Mr. Miller to be deposed regarding the lab relocation, the Court notes that Plaintiff did not allege a claim for retaliation in his Amended Complaint.  Testimony concerning the lab relocation cannot be taken to support an un-alleged claim.

determinative cause of the employer's action."[26]   Concerning the second possibility for showing pretext, the Third Circuit has further stated that a plaintiff may show an invidious discriminatory reason through evidence "that the employer has previously discriminated against her, that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class."[27]

The evidence sought by Plaintiff through Mr. Miller's deposition concerns a subsequent act which may still be relevant to showing an invidious discriminatory intent but is less probative than prior actions "because the logical relationship between the circumstances ... and the employer's decision to terminate is attenuated."[28]   The Third Circuit has specifically cautioned that courts should "consider the passage of time between the other act and the act alleged to be discriminatory" because "[t]here is a point at which a prior or subsequent act becomes so remote in time . . . that the former cannot, as a matter of law, be relevant to intent.[29]   Here, however, the Court need not reach this temporal determination because (1) evidence of retaliation is not relevant towards proving invidious discriminatory intent based on race or national origin, and (2) there is no

[26] *Fuentes*, 32 F.3d at 764.
[27] *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 642 (3d Cir. 1998).
[28] *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 524 (3d Cir. 2003) (quoting *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (3d Cir. 1999)).
[29] *Id.*

7

evidence of overlap between those making the lab relocation and tenure denial decisions.

First, I note that evidence of possible retaliation for filing a PHRC complaint does not indicate invidious discriminatory intent based on race or national origin.[30] In *Burlington Northern and Santa Fe Ry. Co. v. White*, the United States Supreme Court discussed the different purposes and language of the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964.[31] Specifically, the Court explained that, while the anti-discrimination provision "seeks to prevent injury to individuals based on who they are, *i.e.,* their status," the anti-retaliation provision "seeks to prevent harm to individuals based on what they do, *i.e.,* their conduct."[32]   Based on this explanation, Plaintiff's deposition of Mr. Miller concerning retaliation in the form of reactor disassembly and lab relocation would be both irrelevant and beyond the scope of discovery.   Even if Defendant had retaliated against Plaintiff because he filed a PHRC complaint, such evidence would not be relevant in proving invidious discrimination based on his race or national origin.   It would instead demonstrate animus by Defendant because Plaintiff had engaged in a statutorily protected activity.

---

[30] I again note that Plaintiff has not alleged within his Amended Complaint a retaliation claim under Title VII or the PHRA.  Therefore, evidence of retaliation, if discoverable, would be limited to proving that Defendant's legitimate, nondiscriminatory reasons were simply pretext.
[31] *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–63 (2006).
[32] *Id.* at 63.

Second, even if evidence of the lab relocation were offered to show invidious discrimination in favor of a non-class member and not retaliation based on a protected activity, the disassembly and lab relocation decisions would still be outside the scope of discovery because they were not made by the same actors who effected the tenure denial decision.[33]  Specifically, while the decision to deny Plaintiff tenure was made by the College Promotion and Tenure Committee, Dean Easterling, and the Faculty Rights and Responsibilities Committee, there are no facts indicating that this decision-making group influenced the lab relocation decision made by Mr. Miller.[34]  Although Plaintiff suggests that there is evidence that Dean Easterling "was involved in the decision to disassemble my reactor and transfer my laboratory," Plaintiff failed to cite evidence beyond mere conclusory allegations.[35]  Furthermore, because Mr. Miller's affidavit indicates that he alone made the relocation decision, his deposition concerning the matter would prove fruitless in uncovering evidence to the contrary.

## III.   CONCLUSION

Based on the above analysis, the Court will deny Defendant's Motion for a Protective Order Regarding the Deposition of Bruce Miller, with certain caveats.

---

[33] *See Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995)(finding non-decision maker's discriminatory animus relevant when he participated in the challenged employment decision).
[34] Miller Aff. ¶¶ 9, 11–12 (ECF No. 43-4).
[35] Chen Decl. ¶¶ 17–27 (ECF No. 46-1).

Plaintiff will be allowed to depose Mr. Miller concerning the following topics: (1) Mr. Miller's knowledge of Plaintiff's work on a Volvo grant project and (2) Mr. Miller's knowledge of any reduction in Plaintiff's salary based on the denial of tenure.  Plaintiff is, however, barred, for the reasons discussed above, from seeking testimony concerning the reactor disassembly and lab relocation decision.

An appropriate Order follows.


BY THE COURT:


   s/ Matthew W. Brann
Matthew W. Brann
United States District Judge