# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YONGSHENG CHEN, | No. 4:15-CV-01136 |
| Plaintiff, | (Judge Brann) |
| v. | |
| THE PENNSYLVANIA STATE UNIVERSITY, | |
| Defendant. | |

## MEMORANDUM OPINION

### JUNE 8, 2018

Defendant, The Pennsylvania State University ("PSU"), moved for summary judgment on all counts of Plaintiff's Second Amended Complaint. For the reasons that follow, that motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Yongsheng Chen, Ph.D., is an Asian scientist who was born in China.[1] In November 2007, he began working at PSU's College of Earth and Mineral Science ("EMS College") as an Assistant Professor in the Department of

---

[1] Plaintiff's Statement of Additional Facts ("SOAF"; ECF No. 89) ¶¶ 2-3; Defendant's Response to SOAF ("RSOAF"; ECF No. 96) ¶¶ 2-3.

Energy and Mineral Engineering ("EME Department").[2] In the fall of 2012, Dr. Chen applied for tenure.

At PSU, tenure applications—referred to as "dossiers"—face several levels of review. They are evaluated by a committee composed of faculty members from the candidate's department ("Department Committee"); by the head of the candidate's department ("Department Head"); by a committee of faculty members from the candidate's college, one member of which is from the candidate's department ("College Committee"); and by the dean of the candidate's college ("Dean")—in that order.[3] Each assessing body or administrator writes a letter recommending for, or against, a grant of tenure for each candidate.

The reviewers evaluate each candidate in three areas. First, they consider the applicant's "Scholarship of Teaching and Learning." For tenure in the EME Department, this means that "[t]he applicant's teaching record should demonstrate an ability to convey the subject matter to students in an effective manner." Second, the reviewers consider the applicant's "Scholarship of Research and Creative Accomplishment." In the EME Department, "[t]he applicant should demonstrate an ability to carry out independent, high quality research[;] should

---

[2] SOAF ¶ 7; RSOAF ¶ 7.

[3] Defendant's Statement of Undisputed Facts ("SOF"; ECF No. 75) ¶ 40; Plaintiff's Response to Defendant's Statement of Undisputed Facts ("RSOF"; ECF No. 89) ¶ 40. Dossiers are then reviewed by a committee from the university, the Executive Vice President and Provost of the university, and the President of the university. For purposes of this motion, however, those levels of review are irrelevant.

have published significant contributions in recognized, refereed journals over the provisional period[; and] should also demonstrate the capability of supervising graduate-level thesis research." And third, the reviewers consider the applicant's "Service and the Scholarship of Service to the University, Society[,] and Profession." Under this criterion, "[t]he applicant should show evidence of personal involvement in professional and learned societies and in department, college[,] and university affairs."[4]

All five members of Dr. Chen's Department Committee voted in favor of granting him tenure, and that committee's letter rated him as "very good" in all three of the relevant areas. That committee noted his "satisfactory progress" in "supervising graduate students to completion," the "very favorable" letters from external reviewers (*i.e.*, non-PSU affiliated academics who were asked to evaluate Dr. Chen's tenure dossier), and his "impressive" publication record.[5]

Similarly, Dr. Chen's Department Head "strongly support[ed]" a grant of tenure, rating Dr. Chen "very good" in teaching and in service, and "excellent" in research. The Head specifically indicated that Dr. Chen "has become an effective teacher," and noted his "excellent record of publication."[6]

---

[4] Plaintiff's Ex. 27 at DEF001415. (All of Plaintiff's summary judgment exhibits are contained at ECF No. 93-5.)

[5] *Id.* at DEF001476-78.

[6] *Id.* at DEF 001479.

Despite these previous, unanimously favorable reviews, the five members of Dr. Chen's College Committee unanimously voted *against* tenure, characterizing Dr. Chen's record as "marginal across the board." Although the College Committee rated his teaching as "good" and his service as "satisfactory but weak," the committee honed in on research as the "primary deficit in Dr. Chen's record." Specifically, it noted that, during his time at PSU, Dr. Chen published only one "first-authored" paper—*i.e.*, a paper on which his name appeared first in the list of authors—and only one paper on which a graduate student of his was first author. Further, it described Dr. Chen's graduate advising record as "disappointing" and claimed that external reviewers had raised "concerns" about Dr. Chen's record.[7]

The Dean joined the College Committee in recommending against tenure, declaring that Dr. Chen "inspires little confidence." Regarding Dr. Chen's teaching, the Dean first characterized the Department Committee and Head's earlier evaluations as "extrapolat[ing] that [Dr. Chen] will become an accomplished teacher in time." The Dean then stated his belief that "that extrapolation [was] groundless," with "most of Dr. Chen's potential for improvement [already] realized, leaving us with, at best, a 'good' teacher for the future." Like the College Committee, the Dean also believed that Dr. Chen's research was "the area of greatest concern," and denigrated Dr. Chen's record of

---

[7] *Id.* at DEF001481-82.

first-authored papers. The Dean also claimed that Dr. Chen had "little success in advising graduate students through to the completion of their degrees."

Seven other candidates from the EMS College—Jamal Rostami, Jonathan Mathews, Seth Blumsack, Peter LaFemina, Chris Forest, Erica Smithwick, and Michael Hickner—were up for tenure review at the same time as Dr. Chen. Three of these candidates—Drs. Rostami, Mathews, and Blumsack—were from the EME Department. All seven of those other candidates were Caucasian, and they all received tenure.[8] Dr. Chen's tenure application, however, was denied, and his employment with PSU ended in June 2014.[9]

Dr. Chen sued PSU on June 9, 2015.[10] His operative complaint argues that, when denying him tenure, the university illegally discriminated against him on the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA").[11] That complaint also argues that certain steps taken by the university during his tenure review violated contractual obligations owed to him.[12] On September 25, 2017, PSU moved for summary judgment on all of Dr. Chen's claims.[13]

---

[8] SOAF ¶¶ 52, 57; RSOAF ¶¶ 52, 57.

[9] SOAF ¶ 5; RSOAF ¶ 5.

[10] ECF No. 1.

[11] ECF No. 24 (Second Amended Complaint) ¶¶ 111-42.

[12] *Id.* ¶¶ 143-90.

[13] ECF No. 74.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[15] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[16] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[17]

### B. Whether Dr. Chen Has Produced Sufficient Evidence to Establish a *Prima Facie* Case of Discrimination

To prove his discrimination claims,[18] Dr. Chen must first establish a *prima facie* case of discrimination.[19] To do so, he must "show that he is a member of a protected class, that he was qualified for the position but nevertheless was rejected,

---

[14] Federal Rule of Civil Procedure 56(a).

[15] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986).

[16] Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[17] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

[18] Both parties address the Title VII claims and the PHRA claims under the same standard, so this Court will do so as well. *See Wilkerson v. New Media Technology Charter School, Inc.*, 522 F.3d 315, 318-19 (3d Cir. 2008).

[19] *Bennun v. Rutgers State University*, 941 F.2d 154, 170 (3rd Cir. 1991).

and that non-members of the protected class were treated more favorably than he."[20]

PSU concedes that Dr. Chen is able to establish the first two prongs of this test.[21] As to the third prong, it is undisputed that seven out of the eight candidates up for review were Caucasian, and that they all received tenure. It is also undisputed that Dr. Chen, the only Asian candidate, was the only one denied tenure. Dr. Chen, therefore, has established his *prima facie* case.[22]

### C. Whether a Jury Could Conclude that PSU's Stated Reasons for Dr. Chen's Tenure Denial Were Merely Pretextual

PSU's rationale for denying tenure to Dr. Chen is contained in the letters written by the College Committee and by the Dean.[23] Because these reasons are legitimate and non-discriminatory, Dr. Chen must point to evidence sufficient to allow a jury to conclude that these stated reasons were merely pretextual. Dr. Chen can satisfy this burden by "demonstrating[ing] such weakness, implausibilities, inconsistencies, incoherences, or contradictions in [PSU's rationale] that a reasonable factfinder could rationally find them unworthy of

---

[20] *Roebuck v. Drexel University*, 852 F.2d 715, 726 (3d Cir. 1988).

[21] Defendant's Brief in Support of Motion for Summary Judgment (ECF No. 84) at 10.

[22] *See Roebuck*, 852 F.2d at 726 ("[B]ecause of the uniqueness of the tenure decision, in that un unsuccessful candidate is not necessarily replaced by a successful one, the third prong of the *prima facie* showing can be satisfied by showing that tenure positions were open at the time plaintiff was denied tenure, in the sense that others were granted tenure in the department during a period relatively near to the time plaintiff was denied tenure.").

[23] Plaintiff's Exs. 24 and 26.

credence and hence infer that [PSU] did not act for the asserted nondiscriminatory reasons."[24]

To begin with, Dr. Chen highlights the diametrically opposed reviews given by different levels of reviewers. As discussed above, all department-level reviewers—*i.e.*, all members of the Department Committee and the Department Head—unanimously recommended that Dr. Chen be granted tenure. These recommendations were far from lukewarm: the Department Committee rated Dr. Chen's performance as "very good" across the board, and the Department Head "strongly support[ed]" Dr. Chen's tenure application while rating Dr. Chen's work as either "very good" or "excellent." Conversely, the college-level reviewers—*i.e.*, all members of the College Committee and the Dean—unanimously recommended that Dr. Chen be denied tenure. These recommendations were also far from tepid, depicting Dr. Chen as "marginal" and as "inspir[ing] little confidence."

Dr. Chen then juxtaposes the treatment of certain portions of his dossier with the treatment of corresponding portions of other candidates' dossiers. For

---

[24] *Stewart v. Rutgers, The State University*, 120 F.3d 426, 432-33 (3d Cir. 1997); *see also Roebuck*, 852 F.2d at 726 ("Once a plaintiff has made out a *prima facie* case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the complained-of action. Plaintiff then bears the burden of proving that defendant's articulated reasons in face were merely a pretext. However, if plaintiff presents enough evidence for a jury to find that the asserted reasons for the tenure denial were not the actual reasons, then the jury may infer that the employer actually was motivated in its decision by race; plaintiff is not required to provide independent, direct evidence of racial discrimination.").

example, the college-level reviewers all remarked unfavorably on the number of first-authored papers published by Dr. Chen. Two other candidates—Drs. Forest and LaFemina—also had only one first-authored paper in their dossiers. Dr. Forest's research activities, however, were uniformly praised by the college-level reviewers,[25] and Dr. LaFemina's record was explained away.[26]

The college-level reviewers also described Dr. Chen's graduate advising record—he advised one Ph.D. student and one M.S. student through completion of their degrees—as "disappointing" and as having achieved "little success." Candidates with similar advising records, however, were complimented. Dr. Forest, for example, was "noted" for his advising record, yet he completed only two M.S. students.[27]

And the College Committee claimed that external reviewers raised "concerns" about Dr. Chen's record, even though those reviewers' letters, on

---

[25] Plaintiff's Ex. 61 at DEF002872 (calling Dr. Forest a "highly productive researcher"); *id.* at DEF002873 (noting his "publications in top-tier journals").

[26] Plaintiff's Ex. 39 at DEF001825 ("While some reviewers commented that among his many publications there is a low number on which he is lead author, we acknowledge that in his particular specialty area there is a long lead time between initiation of a researcher's own data collection network and publishable results."); *id.* at DEF001826 ("While his publication rate is considered to be a bit below the norm, the quality of his articles in well-respected journals is high, garnering praise from the external evaluators.").

[27] Plaintiff's Ex. 61 at DEF002872; *see also* Deposition of William Easterling (ECF No. 93-3) at 147 ("The Ph.D. is considered the terminal degree in the academic profession. And therefore it is the degree that we give the most value to in training our graduate students.").

balance, were all positive and complimentary.[28] In contrast, for Dr. Blumsack, the College Committee glossed over an unquestionably negative letter—one that stated that Dr. Blumsack "would likely not be promoted at [the reviewer's] current institution"[29]—by highlighting the positive comments made in that letter.[30] Specifically, the College Committee quoted the reviewer as mentioning Dr. Blumsack's "impressive number" of published papers.[31] The reviewer, however, actually noted that, while Dr. Blumsack *seemed* to have "an impressive number" of published papers, "none of [those] publications are in journals that would be considered first, second, or perhaps even third tier . . . ."[32]

Finally, Dr. Chen points to inaccurate or inconsistent statements by the Dean. For example, the Dean characterized the Department Committee and Department Head's letters as "extrapolat[ing] that [Dr. Chen] *will* become an effective teacher," yet neither of those letters relied upon such "extrapolation" to rate Dr. Chen's teaching "very good"—and in fact the Department Head's letter stated that Dr. Chen "*has* become an effective teacher."[33] Further, the Dean

---

[28] Plaintiff's Ex. 27 at DEF001459-66 (the letters of the four external reviewers, which, in turn, refer to Dr. Chen as "impressive," "exceedingly hard working," "significant," and "outstanding").

[29] Plaintiff's Ex. 37 at DEF001623.

[30] *Id.* at DEF001650.

[31] *Id.*

[32] *Id.* at DEF001623.

[33] Plaintiff's Ex. 27 at DEF001479 (emphasis added).

himself, in a letter written a few weeks before the tenure review process began, stated that Dr. Chen was "clearly an effective teacher."[34] That same letter "congratulate[d]" Dr. Chen on his publication record and "look[ed] forward to a successful promotion and tenure outcome."[35] These comments, of course, stand in stark contrast to the Dean's later vote against tenure and his description of Dr. Chen as "inspir[ing] little confidence."

As discussed above, at this stage, Dr. Chen must merely produce enough evidence to allow a jury to disbelieve the reasons given by the College Committee and Dean for denying him tenure. Dr. Chen has satisfied this burden. The disparity between college-level reviewers' assessments and the assessments of the department-level reviewers, combined with the disparate treatment given Dr. Chen's tenure dossier and the contradictory statements by the Dean, would be sufficient for a jury to infer that the College Committee and Dean did not act for their stated reasons. Therefore, this Court will deny PSU's motion for summary judgment on Counts I-IV of Dr. Chen's Second Amended Complaint.

At this stage, of course, the Court is not entitled to weigh the evidence or make credibility determinations.[36] My job is simply to decide whether *any* rational

---

[34] Plaintiff's Ex. 19.

[35] *Id.*

[36] *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . [T]he trial courts should act . . . with caution in granting summary judgment . . . .").

jury *could* find for Dr. Chen on this issue. Therefore, besides holding that *some* jury could reject PSU's stated rational, I make no comment about the strength or weakness about either party's case.

**D.  Whether Dr. Chen Has Produced Sufficient Evidence to Support His Breach of Contract Claims**

Dr. Chen claims that PSU breached its contractual obligations to him by failing to conform to the university's tenure review policies and procedures in several different ways. First, Dr. Chen argues that PSU should have considered a letter from an external reviewer that arrived after the department-level reviewers and the College Committee had completed their consideration of his dossier.

PSU's Administrative Guidelines for HR-23 Promotion and Tenure Procedures and Regulations ("Administrative Guidelines") state that "[i]f [external review] letters arrive after the [tenure] review process has begun, individuals involved in those level of review already completed shall be . . . provided with access to the letters[] and . . . an opportunity to reconsider their recommendation."[37]  Even assuming that the Administrative Guidelines contractually bound the university—which PSU disputes—they still did not require anyone to consider this tardy submission. The external review letter in question was dated February 18, 2013.[38] The Administrative Guidelines, however, set a

---

[37] Plaintiff's Ex. 2 at 12.

[38] Plaintiff's Ex. 97.

deadline of February 15 as the "deadline for submission of . . . new information" to candidates' dossiers[39] and classify external review letters as "information."[40] Therefore, PSU did not breach its contractual obligations to Dr. Chen by failing to provide the February 18 letter to the department- or college-level reviewers.

Second, Dr. Chen argues that the College Committee failed to consult with the Department Head in good faith after the College Committee differed with the Department Head's tenure recommendation.

The Administrative Guidelines state that "[w]hen . . . a committee differs with the administrator at the preview review level"—*i.e.*, when, as here, the College Committee's tenure recommendation is at odds with the Department Head's recommendation—"consultation must occur about reasons for divergence."[41] Additionally, PSU's Human Resources Policy 23 – Promotion and Tenure Procedures and Regulations ("HR23") states that "[w]here the findings of the various groups differ, there is an implicit responsibility to explore the reasons for divergence."[42]

---

[39] Plaintiff's Ex. 2 at 12.

[40] *Id.* at 7-8. (listing "[e]xternal letters of assessment" under "Content and Organization of *Information* in the Dossier") (emphasis added).

[41] Plaintiff's Ex. 2 at 20.

[42] Plaintiff's Ex. 1 at 2.

It is undisputed that members of the College Committee met with the Department Head about the differing tenure recommendations.[43] There is conflicting evidence, however, about what transpired in that meeting—*i.e.*, it is unclear whether the Department Head was merely informed about the College Committee's contrary decision or whether there was a fuller discussion.[44] In any event, assuming (without deciding) that the relevant language from the Administrative Guidelines and HR23 imposed an obligation on the College Committee to "consult[]" or "explore the reasons for divergence" with the Department Head, that obligation was fulfilled by virtue of the reviewers' meeting.[45] Under such imprecise language, this Court cannot impose any more specific duties on PSU.[46]

Finally, Dr. Chen argues that, by denying him tenure, PSU violated his academic freedom. He does not cite to sufficient evidence, however, from which a

---

[43] SOAF ¶ 99; RSOAF ¶ 99.

[44] *See, e.g.*, SOAF ¶ 100; RSOAF ¶ 100.

[45] Dr. Chen also points a document titled "Frequently Asked Questions about Promotion and Tenure," Plaintiff's Ex. 3, to supports his argument here. That document, however, contains no indication that it was meant to contractually bind PSU. *Cf.* Plaintiff's Ex. 2 at 1 ("The Administrative Guidelines . . . *supplement* . . . basic policies set forth in HR-23.").

[46] *See, e.g.*, *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 533 (3d Cir. 2003) ("[T]o determine whether a contract was formed under Pennsylvania law, a court must [determine] . . . whether the terms of the agreement are sufficiently definite to be enforced . . . .").

For the same reason—*i.e.*, lack of "sufficiently definite" langue—Dr. Chen cannot prevail (1) on his claim that the Dean failed to ensure that committee members were "well informed" and (2) on his claim that his interdisciplinary work was not given "special attention."

jury could reasonably infer that, *e.g.*, his tenure denial was motivated by a desire to curtail his research activities or was in retaliation for such activities.[47]

Because Dr. Chen has failed to sustain his breach of contract claims, summary judgment will be entered in favor of PSU on Count V of Dr. Chen's Second Amended Complaint.

## III. CONCLUSION

For the reasons discussed above, summary judgment will be denied on Counts I-IV of Dr. Chen's Second Amended Complaint, but will be granted in favor of PSU on Count V of that complaint. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[47] *See also* Deposition of Yongshen Chen (ECF No. 76-1) at 208 (admitting that, prior to his tenure review, no one at PSU attempted to interfere with his scholarship or publications).